UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| MATT MARSHALL, | ) |
|        Plaintiff, | )    Case No. EDCV 09-1991 AJW |
| | ) |
|        v. | )    MEMORANDUM OF DECISION |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social | ) |
| Security Administration, | ) |
| | ) |
|        Defendant. | ) |

Plaintiff filed this action seeking reversal of the decision of defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application disability insurance benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

Plaintiff filed a disability benefits insurance application on September 18, 2007. He alleged that he had been disabled since January 1, 2007 due to lymphedema[1], peripheral neuropathy, and carpal tunnel syndrome. [JS 2; Administrative Record ("AR") 70, 82, 92]. In a written hearing decision that constitutes the Commissioner's final decision in this matter, an administrative law judge (the "ALJ") concluded that

---

[1] Lymphedema is "[s]welling (especially in subcutaneous tissues) as a result of obstruction of lymphatic vessels or lymph nodes and the accumulation of large amounts of lymph in the affected region." Stedman's Medical Dictionary lymphedema (27th ed. 2000).

plaintiff was not disabled. [AR 9-19]. The ALJ found that plaintiff had a severe disorder of the musculoskeletal system, lymphedema, peripheral neuropathy, and morbid obesity, but that he retained the residual functional capacity ("RFC") to perform essentially a full range of light work. [AR 10-13, 18]. Relying on the Medical-Vocational Guidelines, 20 C.F.R. Part 404, Subpart B, Appendix 2 (the "grids"), the ALJ concluded that plaintiff could perform work available in significant numbers in the national economy. [AR 18].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Social Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)(internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Social Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Social Sec. Admin., 169 F.3d 595, 599 (9th Cir.1999)).

**Discussion**

**Treating source opinion**

Plaintiff contends that the ALJ failed adequately to consider the opinion of treating physician Richard H. Gordinier, M.D. [See JS 1-11].

Treatment reports in the record indicate that Dr. Gordinier treated plaintiff at The Phelan Clinic between June 26, 2000 and March 6, 2008. [AR 143-173]. The ALJ noted that Dr. Gordinier "provided routine, conservative treatment on an outpatient basis for complaints of swelling and pain," specifically, "pain in the lower back, soreness in the shoulders, and swelling in the wrists and legs," and referred plaintiff for a neurological consultation. [AR 14]. In May 2008 and August 2008, plaintiff underwent right and left

1  carpal tunnel release surgery, respectively. [AR 29, 214-217].  The ALJ remarked that post-surgical

2  treatment reports showed no evidence of wrist swelling, which the ALJ interpreted as evidence of the

3  effectiveness of plaintiff's carpal tunnel release surgeries. [AR 14].

4  In his hearing decision, the ALJ said that had read and considered a note from Dr. Gordinier

5  excusing plaintiff from work from May 16, 2007 through November 16, 2007 [AR 159], as well as a note

6  from Dr. Gordinier dated November 12, 2007 [AR 148] stating that plaintiff was permanently disabled due

7  to chronic lymphedema. [See AR 15]. The ALJ wrote that Dr. Gordinier's "conclusions have no probative

8  value and [I] reject them.  As an opinion on an issue reserved to the Commissioner, these statements are not

9  entitled to controlling weight and are not given special significance pursuant to 20 C.F.R. [§] 404.1527(e)."

10  [AR 15-16].

11  A treating physician's opinion is not binding on the Commissioner with respect to the existence of

12  an impairment or the ultimate issue of disability.  Tonapetyan v. Halter, 242 F.3d 1144, 1148 (9th Cir.

13  2001). However, a treating physician's medical opinion as to the nature and severity of an individual's

14  impairment is entitled to controlling weight when that opinion is well-supported and not inconsistent with

15  other substantial evidence in the  record.  Edlund v. Massanari, 253 F.3d 1152, 1157 (9th Cir.  2001);

16  Holohan v. Massanari, 246 F.3d 1195, 1202 (9th Cir.  2001); see 20 C.F.R. §§ 404.1527(d)(2),

17  416.927(d)(2); Social Security Ruling ("SSR") 96-2p, 1996 WL 374188, at *1-*2.  Even when not entitled

18  to controlling weight, "treating source medical opinions are still entitled to deference and must be weighed"

19  in light of (1) the length of the treatment relationship; (2) the frequency of examination; (3) the nature and

20  extent of the treatment relationship; (4) the supportability of the diagnosis; (5) consistency with other

21  evidence in the record; and (6) the area of specialization.  Edlund, 253 F.3d at 1157 & n.6 (quoting SSR 96-

22  2p and citing 20 C.F.R. § 404.1527); Holohan, 246 F.3d at 1202.

23  If a treating source opinion is uncontroverted, the ALJ must provide clear and convincing reasons,

24  supported by substantial evidence in the record, for rejecting it.  If contradicted by that of another doctor,

25  a treating or examining source opinion may be rejected for specific and legitimate reasons that are based

26  on substantial evidence in the record.  Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1195 (9th

27  Cir. 2004); Tonapetyan, 242 F.3d at 1148-1149; Lester v. Chater, 81 F.3d 821, 830-831 (9th Cir. 1995).

28  The notes from Dr. Gordinier are written on a prescription-pad type form entitled "Physical Medical

3

Excuse Note." The May 2007 note requests that plaintiff be excused from work from May 16, 2007 through November 16, 2007. [AR 159]. No diagnosis or explanation is offered for excusing plaintiff from work. There are three similarly brief notes in the record from Dr. Gordinier that the ALJ did not specifically mention. Those notes are dated January 2, 2007; February 13, 2007; and April 2, 2007. They request that plaintiff be excused from work from January 7, 2007 through January 18, 2007; February 13, 2007 through April 1, 2007; and April 1, 2007 through June 1, 2007, respectively. [AR 162-163, 167]. The third note states that plaintiff "may return to normal duty or activity on" June 1, 2007 without restrictions, but that note appears to have been superseded by the May 2007 note requesting that plaintiff be excused from work through November 2007. [AR 159, 162].

The November 2007 note differs from the previous notes only in that it requests that plaintiff be "permanently" excused from performing his normal duty or activity due to "chronic lymphedema." [AR 148].

The ALJ permissibly rejected those notes as wholly conclusory disability opinions. On all but the November 2007 note, Dr. Gordinier failed to identify any diagnosis, physical or mental impairment, symptoms, clinical or objective findings, or functional restrictions supporting *any* degree of limitation, much less permanent disability. Dr. Gordinier did not even use the term "disabled" on the notes. The diagnosis of chronic lymphedema in the November 2007 note seeking to excuse plaintiff permanently from his normal work duties adds no meaningful support to his opinion, since nothing in the record suggests that chronic lymphedema necessarily is disabling. See Sample v. Schweiker, 694 F.2d 639, 642-643 (9th Cir. 1982) (noting that the existence of a diagnosed emotional disorder "is not per se disabling," and that "there must be proof of the impairment's disabling severity").

Dr. Gordinier's treatment reports, which the ALJ summarized, contain only sporadic clinical findings, such as swelling or range of motion limitation. [E.g., AR 150-151, 161]. Several of the progress notes lack any examination findings, while others affirmatively indicate that no physical examination ("NE") was conducted. [E.g., AR 144, 146-147, 158, 160]. Dr. Gordinier ordered x-rays of plaintiff's left shoulder in September 2007 and of his bilateral wrists in February 2008, which were all negative. [AR 168-170]. Dr. Gordinier did not "find" or "determine" that plaintiff had the pain and other symptoms that are noted in the progress reports under "Chief Complaint," as plaintiff suggests. [JS 4]. That section was used

to record plaintiff's subjective complaints, not Dr. Gordinier's examination findings or impression.  Thus, Dr. Gordinier's treatment notes do not supply what his perfunctory disability notes lack.

Dr. Gordinier also referred plaintiff to board-certified neurologist Noel C. Bernales, M.D. for a neurological consultation in October 2007. [AR 126-132].  Dr. Bernales noted that plaintiff demonstrated "[h]yperesthesia/dysesthesia[2] . . . on pinprick, light touch and vibration testing distally at the legs and arms." [AR 126].  Dr. Bernales suspected that plaintiff's sensory symptoms could be "secondary to limb edema," but "a peripheral poly neuropathic process cannot be excluded entirely." [AR 126].  Dr. Bernales prescribed Neurontin (gabapentin) for nerve pain. No functional restrictions were assessed. [AR 126, 128]. A December 2007 electromyography ("EMG") and nerve conduction velocity ("NCV") study revealed "probable motor axonal peripheral polyneuropathy[3] possibly affecting distal nerve branches in view of muscle denervation changes despite normal NCV values," and "mild segmental median neuropathy across the wrist, bilaterally." [AR 130].  Dr. Gordinier's progress notes reflect the addition of gabapentin to plaintiff's prescriptions [e.g., AR 147, 149], but do not say anything else about Dr. Bernales's findings.

The ALJ did not err in rejecting Dr. Gordinier's opinions as unsubstantiated expressions of disability that were essentially legal conclusions devoid of factual support.  See Holohan, 246 F.3d at 1202 n.2 (stating that a physician's opinion may be "entitled to little if any weight" where the physician "presents no support for her or his opinion"); Tonapetyan, 242 F.3d at 1148 ("[A]n ALJ need not accept a treating physician's opinion that is conclusory and brief and unsupported by clinical findings.") (citing Matney v. Sullivan, 981 F.2d 1016, 1019 (9th Cir. 1992)); Johnson v. Shalala, 60 F.3d 1428, 1432-1433 (9th Cir. 1995) (holding that a doctor's opinions were conclusory because they included "no specific assessment of [claimant's] functional capacity'" and "therefore they fall short of the substantial medical evidence required to establish

---

[2]    Hyperesthesia is abnormal acuteness of sensitivity to touch, pain, or other sensory stimuli, while dysesthesia is abnormal or unpleasant sensation in response to, or in the absence of, such stimuli.  Stedman's Medical Dictionary dysesthesia, hyperesthesia (27th ed. 2000).

[3]    Polyneuropathy is a nontraumatic generalized disorder of peripheral nerves. The sole or predominant feature of axonal polyneuropathy is degeneration of the axon, the part of a nerve cell through which impulses travel away from the cell body. Stedman's Medical Dictionary neuropathy, axon (27th ed. 2000).

1    a disability. . . ”).

2        **Development of the record**

3        Plaintiff contends that the ALJ did not adequately develop the record with respect to the opinion of

4    treating physician Eduardo Gallegos, M.D. [JS 11-14].

5        The ALJ noted that plaintiff consulted Dr. Gallegos at High Desert Neuro-Diagnostic Medical Group

6    on February 27, 2009 and April 28, 2009.  During the first visit, plaintiff complained of “Fibromyalgia with

7    11/18 painful joint spots,” nonrefreshing sleep, numbness and tingling in both lower extremities, bilateral

8    shoulder pain, and status post carpal tunnel surgery bilaterally. [AR 239].  Plaintiff was six feet, three inches

9    tall and weighed 305 pounds. [AR 240].  Plaintiff’s physical examination was normal.   Plaintiff’s

10   neurological examination was normal except for hypoesthesia[4] in a “stocking-glove distribution,” (that is,

11   in the feet,  toes, hands, and fingers).   [AR 240].

12       Dr. Gallegos diagnosed fibromyalgia, peripheral polyneuropathy, and rotator cuff tear.   He

13   prescribed Cymbalta (duloxetine), an antidepressant that also can be used to treat pain and tingling caused

14   by diabetic neuropathy and fibromyalgia.  See U.S. National Library of Medicine, National Institutes of

15   Health, Pub Med Health, Duloxetine, *http://www.ncbi.nlm.nih.gov/pubmedhealth/PMH0000274* (last visited

16   November 17, 2010).

17       During his return visit in April 2009, plaintiff complained of neck pain that worsened following a

18   cervical trigger point steroid injection, which appears to have been administered by Dr. Loomba, a pain

19   specialist. [See AR 175-177].  Plaintiff also complained of bilateral carpal tunnel syndrome, symptomatic

20   in the left upper extremity. [AR 236].  He had positive Tinel’s[5] and Phalen’s[6] signs in the left upper

_____

22       [4]   Hypoesthesia is a synonym for hypesthesia, which means diminished sensitivity to
23   stimulation. Stedmans Medical Dictionary hypesthesia (27th ed. 2000).

24       [5]   “Tinel’s sign” occurs when pain, tingling or a shock-like sensation are produced distal to the
25   injury, along the nerve distribution, as a result of percussing a peripheral nerve over the area of
26   injury, and is significant for peripheral nerve injury due to trauma, compression, and similar
     conditions. Tinel’s sign “is commonly used for carpal tunnel syndrome.” Dan J. Tennenhouse, M.D.,
     J.D., F.C.L.M.,  Attorneys’ Medical Deskbook 3d § 11:2 (2002).

27       [6]   A positive “Phalen’s sign” refers to tingling in the fingers produced when the wrist is flexed
28   fully and held for one minute and also is significant for carpal tunnel syndrome.  Dan J.

extremity. [AR 237]. Dr. Gallegos diagnosed neck pain, carpal tunnel syndrome, and bulging cervical disc. [AR 237]. Under "plan," Dr. Gallegos noted that plaintiff was "[a]ble to carry 10 to 15 pounds weight." Dr. Gallegos continued plaintiff on Cymbalta. [AR 237].

The ALJ rejected Dr. Gallegos's statement that plaintiff was able to carry ten to fifteen pounds. The ALJ wrote that

> [t]he treatment records note [that plaintiff's] only current problem was peripheral polyneuropathy. The findings from Dr. Gallegos's examinations on both visits were unremarkable. Dr. Gallegos noted [that plaintiff] had normal range of motion in the neck, had normal gait, had 5/5 muscle strength in all major muscle groups, and was neurologically intact.

[AR 15]. He concluded that the limitation to carrying no more than 15 pounds was

> unsupported by the medical evidence. It is unclear why or how Dr. Gallegos formed this limitation. The opinion expressed is quite conclusory, providing very little explanation of the evidence relied on in forming that opinion.

[AR 16].

The ALJ's reasoning is defective because Dr. Gallegos made positive neurological and diagnostic findings that could support at least some degree of limitation in lifting and carrying. Plaintiff had neurological evidence of peripheral neuropathy and carpal tunnel syndrome in the form of diminished sensation in a stocking-glove distribution, positive Tinel's sign, and positive Phalen's sign. Dr. Gallegos also said that plaintiff had a bulging cervical disc and rotator cuff tear.

Furthermore, Dr. Gallegos's findings were not anomalous in the context of the record as a whole. For example, the record contained medical evidence and diagnoses of carpal tunnel syndrome and peripheral neuropathy, and the ALJ found that plaintiff had a severe musculoskeletal disorder and peripheral neuropathy.

The ALJ erred in concluding that there was no objective evidence supporting Dr. Gallegos's opinion. The ALJ was obliged to explain why those findings were insufficient to support the ten-to-fifteen pound

---

Tennenhouse, M.D., J.D., F.C.L.M., Attorneys' Medical Deskbook 3d § 11:2 (2002).

lifting and carrying restriction. See Thomas, 278 F.3d at 956-957 ("Although the treating physician's opinion is given deference, the ALJ may reject the opinion of a treating physician in favor of a conflicting opinion of an examining physician if the ALJ makes findings setting forth specific, legitimate reasons for doing so that are based on substantial evidence in the record. The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.") (internal quotation marks and citations omitted).

Finally, "the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered, even when the claimant is represented by counsel." Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001). Thus, if the ALJ rejected Dr. Gallegos's opinion because it was ambiguous or unclear, he erred in failing to recontact Dr. Gallegos or to take other steps to clarify the ambiguity. See Mayes, 276 F.3d at 459-460 (stating that "[a]n ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence").[1]

**Credibility finding**

Plaintiff also contends that the ALJ failed to provide clear and convincing reasons for rejecting the alleged severity of plaintiff's subjective complaints. [See JS 14-20].

Once a disability claimant produces evidence of an underlying physical or mental impairment that is reasonably likely to be the source of his or her subjective symptoms, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also 20 C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Although the ALJ may then disregard the subjective testimony he considers not credible, he must provide specific, convincing reasons for doing so. Tonapetyan, 242 F.3d at 1148; see also Moisa, 367 F.3d at 885 (stating that in the

---

[1]   In Mayes, the Ninth Circuit rejected the claimant's argument that the ALJ erred in failing to develop the record with respect to a diagnosis of herniated disc that was not made until five months after the administrative hearing. Mayes, 276 F.3d at 459-460. Mayes is distinguishable. In this case, Dr. Gallegos's reports were before the ALJ at the time of the administrative hearing, and they were consistent in at least some respects with other evidence in the record before the ALJ.

absence of evidence of malingering, an ALJ may not dismiss the subjective testimony of claimant without providing "clear and convincing reasons"). The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885; see Light v. Social Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) (enumerating factors that bear on the credibility of subjective complaints); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989)(same). If the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

The ALJ summarized plaintiff's subjective symptom testimony during the April 2009 administrative hearing. [AR 13; see AR 20-34]. The ALJ noted that plaintiff testified, among other things, that he had pain in his shoulders, neck, lower legs, lower back, and arms; frequent headaches; and swelling in his legs. Plaintiff described his pain as constant, sharp, tingly, and often accompanied by numbness. [See AR 25-29]. Plaintiff said that the pain had been constant for the past two years and affected him throughout the day. Plaintiff testified that he had to lie down for 21 hours every day, and could sit and stand for one hour at most before he had to lie down or change positions. [AR 13, 25]. Plaintiff rated the pain in his neck as eleven on a one-to-ten scale, and the pain in his other areas as a six or seven. [AR 13, 25-29]. Plaintiff said that he took Vicodin for pain and Soma as a muscle relaxant, and conceded that his medication "takes the edge off," but stated that it reduced his pain by only two or three levels. [AR 13, 25-29].

Plaintiff said that he lived with his parents, who were disabled and unemployed, and his fifteen-year-old daughter. [AR 13, 31]. Plaintiff reported that he stopped working in January 2007, when his doctor put him on "permanent disability," and that he received state disability benefits until 2008. [AR 30-32]. Plaintiff said that he retained a valid drivers license and drove himself to doctors' appointments at a maximum distance of about 25 miles each way. [AR 13, 30-31].

The ALJ found plaintiff's subjective allegations "less than fully credible" because: (1) they were "inconsistent with the objective medical evidence which indicates an attempt by the claimant to exaggerate the severity of his symptoms" [AR 13]; (2) plaintiff "claimed he has to lie down for 21 hours every day and described debilitating pain" but "still maintained a valid driver license and was able to drive himself to his doctor appointments" [AR 13]; and (3) plaintiff received "routine, conservative care since the alleged onset

date." [AR 14].

The ALJ did not provide clear and convincing reasons for concluding that plaintiff's subjective symptoms are compatible with performing essentially a full range of light work. The ALJ may not "reject a claimant's subjective complaints *based solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." Bunnell, 947 F.2d at 343 (emphasis added). The ALJ permissibly concluded that the objective medical evidence does not support such an extreme subjective limitation. However, the ALJ's other stated reasons for disbelieving plaintiff are not convincing or legitimate.

Plaintiff's testimony that he spends about 21 hours a day lying down due to pain is at the extreme end of the scale of subjective limitations. Nonetheless, the ALJ cannot disbelieve plaintiff merely because his allegation seems far-fetched. If that allegation is as exaggerated the ALJ believed, a careful inspection of the record should reveal evidence that is inconsistent with, or fails to corroborate, the extreme degree of limitation alleged. Plaintiff's retention of a driver's license and his ability to drive occasionally to doctor's appointments, however, is not necessarily inconsistent with his testimony that he spent most of his waking hours lying down. Therefore, it cannot support the weight the ALJ seeks to place on it. See Vertigan v. Halter, 260 F.3d 1044, 1049-1050 (9th Cir. 2001) (holding that the ALJ erred in relying on the claimant's testimony that she was able to go grocery shopping with assistance, walk approximately an hour in the mall, socialize, play cards, swim, watch television, read, and exercise at home because those activities did not "consume a substantial part of" her day, and explaining that "the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from her credibility as to her overall disability. One does not need to be utterly incapacitated in order to be disabled.").

The ALJ's observation that plaintiff received "routine, conservative care," on the other hand, is a legitimate, convincing reason for concluding that plaintiff does not have a valid medical reason for needing to lie down 21 hours a day, every day. See Meanel v. Apfel, 172 F.3d 1111, 1114 (9th Cir. 1999) (explaining that the ALJ properly considered, as part of his credibility evaluation, the treating physician's failure to prescribe, and the claimant's failure to request, medical treatment commensurate with the "supposedly excruciating" pain alleged) (citing Bunnell, 947 F.2d at 346). However, the ALJ did not demonstrate that plaintiff's remaining subjective allegations were materially disproportionate to his medical treatment.

Plaintiff testified that he had a significant level of pain, tingling, and numbness despite routine use of narcotic pain medication and a muscle relaxant.  He said that his symptoms were constant and had been present for about the past two to three years. Plaintiff also said that he had to frequently change positions to alleviate his discomfort.  Plaintiff's carpal tunnel symptoms were severe enough to prompt him to undergo carpal tunnel release surgery. He sought help from pain specialists and neurologists for his pain and swelling.  [See, e.g., AR 175-183].

In addition, plaintiff did not testify to any daily activities that "translate" to an ability to perform light work, and the ALJ did not point to any evidence of routine activities that belied plaintiff's alleged level of inactivity.  Moreover, three treating doctors—Dr. Gordinier, Dr. Gallegos, and Dr. Stoops—appear to have found plaintiff's subjective symptoms credible to some degree, since they imposed restrictions that do not seem warranted by their objective findings alone. [See AR 14-16]. The credibility of plaintiff's subjective allegations is also bolstered somewhat by his uncontradicted testimony that he received state disability benefits for a time after his alleged onset date.  The ALJ did not address these factors that tended to enhance plaintiff's credibility, and the evidence he cited did not amount to clear and convincing reasons for concluding that plaintiff's subjective symptoms were compatible with light work.

For these reasons, the ALJ's credibility finding is not supported by substantial evidence and reflects application of an incorrect legal standard.

**Remedy**

The choice whether to reverse and remand for further administrative proceedings, or to reverse and simply award benefits, is within the discretion of the court.  See Harman v. Apfel, 211 F.3d 1172, 1178 (9th Cir.) (holding that the district court's decision whether to remand for further proceedings or payment of benefits is discretionary and is subject to review for abuse of discretion), cert. denied, 531 U.S.  1038 (2000). The Ninth Circuit has adopted the following test to determine whether evidence should be credited and the case remanded for an award of benefits:

(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

1   Harman, 211 F.3d at 1178 (quoting Smolen, 80 F.3d 1273, 1292 (9th Cir. 1996)).

2          A remand for further administrative proceedings is the appropriate remedy because it is not clear

3   from the record that the ALJ would be required to find plaintiff disabled if he fully and fairly developed the

4   record and properly weighed all of the evidence of record. On remand, the ALJ should give plaintiff the

5   opportunity for a new hearing, obtain additional medical and vocational evidence as appropriate, and issue

6   a new hearing decision with appropriate findings.[2] See Bunnell v. Barnhart, 336 F.3d 1112, 1115-1116 (9th

7   Cir. 2003) (remanding for further administrative proceedings where several "outstanding issues" remain to

8   be resolved, including "if she is disabled, the timing and duration of her disability," and whether, according

9   to a vocational expert, there was alternative work the claimant could perform with all of the limitations

10  supported by the record).

11  ///

12  ///

13  ///

14  ///

15  ///

16  ///

17  ///

18  ///

19  ///

20  ///

21  ///

22  ///

23  ///

24

25

26

27          [2]     This disposition makes it unnecessary to consider plaintiff's additional contentions regarding

28  the ALJ's consideration of his medications and the need for vocational expert testimony. [See JS 20-26].

12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Conclusion**

For the reasons stated above, the Commissioner's decision is not supported by substantial evidence and does not reflect application of the proper legal standards.  Accordingly, the Commissioner's decision is **reversed**, and this case is **remanded** to the Commissioner for further administrative proceedings consistent with this memorandum of decision.

**IT IS SO ORDERED.**

November 19, 2010

_____
ANDREW J. WISTRICH
United States Magistrate Judge